Good morning. Randy Lyon, attorney for Mrs. Greene. This court asked that we address the Garcetti v. Sabellis decision, and I read it. I'm not sure I understand why the court got the position it did. I think, frankly, the Ninth Circuit position was a better position. However, it's what we're faced with. As I look at that decision now, and based on that, I started looking at what the court actually referred to it, and it said, this is not a all-inclusive, if it has to do with your employment, it's out. You don't get protection. And in this case before you, I think there are a number of things that distinguish it and give us a basis for going outside that decision. Number one — But wouldn't you find that some of her comments were being made in a capacity as a private citizen in order to distinguish this case from Garcetti? Yes, I think that is one of the ways. But I also think there are some other exceptions that may be found that would apply in this case. My client was a lead paramedic. But what's the public interest in whether Hicks does a good job or doesn't do a good job? Isn't that solely a matter of employment practice? No. If Hicks does a bad job, people die. When my client was supervising a trainee paramedic and reported that he was making poor choices, discussed that with the nurse practitioner who was their advisor, who is outside the fire department, discussed it with Dr. Hoffman, who is their medical advisor, the doctor who supervises paramedics outside the department. But those are public issues as to whether this man is qualified to earn the title of paramedic. How is that different from the meetings that were conducted between the Los Angeles County District Attorney's Office and the Sheriff's Office in Garcetti? I mean, it seems to me it's all part of the criminal justice system in Garcetti. And here, those folks are part of what the Mason County Board is, but the Emergency Medical Services Board that basically acts in conjunction with the fire department to render these services. Well, I would treat the difference somewhat like the Department of Health in supervising medical practitioners who are licensed. Dr. Hoffman is the medical practitioner at Mason General who monitored. He's the one who has to certify a paramedic. Just as the Department of Health issues a license for a medical practitioner, and if someone were to make a complaint to the Department of Health that a doctor was doing something inappropriate, that he was committing malpractice, those things would automatically be given protection. If my client was complaining that an employee showed up to work drunk as reported to her by another employee, it wasn't her observation, and she merely passed that along to a supervisor, a private citizen doing that same act would be exercising free speech. Following up on what Judge Tomlin said in Garcetti, what Ceballos was saying is that innocent people can go to jail under this system. I mean, there's always a public interest in innocent people going to jail or people dying, but he said it in answer to a request from his supervisor, the same as Graham in this case. Graham has enough. So therefore, Garcetti v. Ceballos is binding upon us, is it not? Well, the decision is binding upon us, no question about that. Is that applicable to this case? I believe there are facts set forth in that case that allow you to find exceptions. The exception is not because Hicks caused people to die, because Ceballos can say that Garcetti's causing people to go to jail who are innocent. So that's not the interest. What other distinguishing point do you see that Garcetti does not apply to this case? Anything that she did not in her official duties would be outside this. Expressing her opinion to the chief when she discussed with whether or not they should bring on an off-duty person, although he may have been looking for her opinion. She wasn't involved in the writing of the letter, but she was disciplined for writing of the letter. That was done by the staff on her crew. They used that as a basis, in part, for demoting her from captain. We believe it was pretextual, and we believe that... Why isn't that part and parcel of her employment duties as the platoon supervisor, or the captain, in charge? Talking to the chief about whether or not this person should be asked to require it. But that would be. But when her employees did it in the form of a letter, which they signed, which she knew nothing about, how is that part of her duties? And that was one of the stated bases. How is that part of her statement? Well, that's her statement. What I'm referring to here is a pretext used to terminate my client's position as a captain, which ultimately reduced her all the way down to a paramedic, and then subsequently she was fired because of an investigation. Wait, wait, wait. A pretext when the statement is made in the form of a letter that she knew nothing about, written by the people on her ship. Right. And when the chief disciplined her for that, it was pretextual, because she had no knowledge of it. There's absolutely nothing in the record that shows she had any knowledge that these folks had circulated this letter, were providing it to the chief, and he used it as one of the bases for pneumonia. So it's a pretext. So is this now your retaliation claim? That falls within her retaliation. You're talking about the First Amendment claim. Yes, so did I. Well, we're going back and forth, because I only have a few minutes here to convince you that one of these claims ought to survive. You'd risk it too much on one claim for you to go to another one, right? Kind of a blender approach to oral argument. All right. I would argue, though, that there are some exceptions, and that she's talking to a licensing body, that she has an obligation as a paramedic, as a licensed individual, to truthfully and appropriately respond to her supervising physician, to the supervising nurse, and if there's retaliation for that. And it survives him in making his report and in talking to the grand jury. He was there under subpoena. He was told to make his report. All right. But I think there was also an issue there about whether or not he actually had had any disciplinary action taken at him, because he was transferred and he had, as far as I know, the same wages. I saw nothing about any reduction in wages, any loss of privileges. He wasn't taken to the Supreme Court unless there was some action against him. That's not a ground for distinction. It's not a ground for distinction. Or do you want to go to your Title VII retaliation? Well, I'm hoping that you're going to find some exceptions to the Supreme Court decision, because, frankly, I think the blanket rule is way too harsh. And I think if somebody is making a complaint to a licensing body, it should be granted First Amendment speech protection, because it is the same. Right. You would say that private and public interest in addressing official wrongdoing and threats to health and safety can outweigh the government's stake in the efficient implementation of policy. And when they do public employee to speak on these matters, they're exercising protected speech. The problem is we might agree with you, but that's the dissent. I understand. Well, I happen to agree with them. But I think the Supreme Court left the door open for you to evaluate on a case-by-case basis whether or not there is something that outweighs the government's risk or the government's need to control it, and that it can be covered. And I think it's clear they said it can be covered under the First Amendment. And the question is, do you want to carve out an exception? Do you want to find it? Do you want to see that it's there? On what fact can we carve out an exception? That she is reporting to an outside body, the licensing authority, which in this case was Dr. Hoffman, the physician at the hospital who supervises all the Mason County paramedics. How is Dr. Hoffman different than the principal from the grand jury? It's part of the licensing body. The grand jury is merely a function of the court. One of the players in the... I'm not sure that makes it any stronger. Oh, I understand. I mean, like I said, I can disagree with the Supreme Court, but I understand that's what we're bound by. Okay. If for some reason we decide that we really do have to follow Garcetti and the First Amendment claim is out, what's left of the case? That is the retaliation and the protectual action that the chief made up reasons to demote this particular captain. She was an acting lieutenant who got a captain's position because it became open and she was first on the list and he had no excuse to be able to go around her. We believe that his demotion of her is shown to be protectural because if you look at what his reasons for doing it were, even to the letter that was written on which it was based by the assistant chief, it was done, I think, on December 7th when she was demoted on December 8th or something like that. Before we get to the merits of the retaliation claim, can you help explain how we can get around Coleman versus Quaker Oats? Because as I understand it, your retaliation claim wasn't raised until after the fire district moved for summary judgment. And although the district court didn't rule on that ground, the objection was raised by the defendant. I'm trying to figure out why Quaker Oats doesn't control. In our original complaint, we indicated that it was done as a pretext. And I think that raised the issue. I wish that was gender discrimination, was it not? Yes. Okay. That's a different theory of retaliation. So the question is whether or not the defendant was surprised after discovery had closed and summary judgment motions had been filed by your shift in legal theory. There's no discovery. And I'll leave that to your discretion. Okay. I'd like to reserve the balance for rebuttal so I can at least respond to what they say. In the case of court, counsel, I'm Steve DiGiulio, appearing on behalf of respondents in this matter. Very briefly, I only want to address three brief points this morning. First, some uncontested facts. It is Chief Green who hired the appellant. It is Chief Green who promoted the appellant to lieutenant. It was Chief Green who promoted the appellant to the position of captain. So it is not surprising that when we get to the point of summary judgment and the argument that there is no sex discrimination, it's not surprising that the case would then be switched and brought forward on a retaliation basis. In answer to Judge Tallman's question, the trial court did rule on the procedural issue. And respondents neither at the trial court level nor in this court has ever addressed the issue of the procedural failings to plead retaliation. As I remember, the trial court's decision said putting aside. Yeah. Putting aside the question of not pleading. I'll find it for you. But the trial court came back to that and I quote, because Ms. Graham's retaliation claim was not pled and because she has not established the liability of that claim. I'm reading from page five of the order, leaving that issue aside, there are also problems with plaintiff's retaliation claim. But later on, he goes back to page seven. He comes back to that and rules on both parts. I see. It's page seven, line six. I hadn't noticed it. Because Ms. Graham's retaliation was not, he says, pled. And because she has not established the liability of the claim. I think to the trial court's credit, for the benefit of this court, he has addressed both issues, assuming that the court needs to reach those issues. But at no place that the trial court, for its briefing or argument to this court, has the appellant addressed the Quaker Oats case. And the case is clear. It can't switch theories after the close of discovery and its summary judgment. And that's exactly what happened in this case. The answer to the other question that the Court raised regarding the Garcetti analysis, it is clear that the Supreme Court in that case recognized that all speech in the workplace is not prohibited or not allowed under the First Amendment. There is, there may be exceptions. The Court said employees in some cases may receive First Amendment protection for expressions made at work. The Court left open that window and discussed certain exceptions that were not addressed in this case, particularly in the case of academic field. But the ruling in that case, which clearly applies in this case without exception, was with respect to statements made by workers with respect to their official duties. And there is no disputed fact in this case that as a supervisor, as the third in command of the department at the position of captain when these issues arose, that the appellant was acting in her official supervisory capacity regarding any allegations of wrongdoing or the manner in which she managed her subordinate personnel. So is your argument basically a course in scope kind of an argument? That as long as the statements are made within the course and scope of her duties as a captain supervising the work performance of the paramedics assigned to her shift, that those statements can never be protected by the First Amendment? That's exactly what the case said. When the speech relates to the specific duties of the position, they cannot rise to a First Amendment violation. Counsel or the appellant raises this parade of horribles with regard to complaints. Well, you can take notice of the fact that there is a specific provision and procedure available under the state of Washington's licensing laws regarding the qualifications of health care professionals, including paramedics. And there's no issue in this case that any employee was subject to complaints. She had written a letter to the local newspaper in Shelton saying, you know, I just don't think this individual is qualified. And I think the licensing board would be making a terrible mistake if they were certifying him as a paramedic. Questions of defamation aside, would that be an exception to Garcetti? It may be an exception to Garcetti. It is not present in this case. But it may be an exception to Garcetti because Garcetti sets aside those issues where the speech is directed outside and specifically refers, for example, in its exception to Diven versus Westford and Lyon Consolidated School District, where the response was in the course of employment, was in response to an outside survey regarding employment discrimination in that particular workplace. So there is a potential exception. It's not in this case. But there is that potential exception that I believe that the Supreme Court recognized. But I want to dispel the notion that simply because there was internal discussion among the department or the department's supervisory personnel, the chief or the medical examiner, that that somehow takes it outside of the holding in the Garcetti case. It doesn't. And think about the examples. One nurse complaining about another nurse's conduct in a hospital. Does that give rise to a First Amendment claim? A police officer complaining about another police officer's handling of an arrestee. Does that give rise to a civil rights claim? One building inspector complaining about another building inspector's conduct. On an inspection site. Does that give rise to a First Amendment claim? Absolutely not. And that's what the Supreme Court is saying. We're not going to litigate all these matters in the federal courts. And, you know, setting aside all the other opportunities to review these issues under whistleblowing and other protections that are available to public employees. I want to turn just very briefly to the retaliation claim. Again, we've talked about the procedural aspects of this. But as the trial court did, this court in review of the record will find that there is nothing other than, well, arguably they don't even get past the prima facie case. But even if you assume that they get past the prima facie case here, that's all they stand on. She filed a complaint and she was fired within a month after she filed a complaint. That's her prima facie case. And when presented with the uncontroverted evidence regarding the investigation, the wrongdoing, and the basis for the discipline, there is no response to that. The response to that is, I was fired within a month after I filed a complaint with the Human Rights Department. Well, counsel, as to the string of bad job performances, the failure to investigate and a fellow fireman who was drunk, Hicks mismanagement, the failure to call in and say that she wasn't going to the fire and she was going to follow a heart attack patient. Weren't all of those job actions separately punished? And hadn't she done all her time for those so that there weren't really a basis for determination? I mean, there wasn't a causal connection between the misbehavior and the termination because she'd already spent her two days suspended, seven days suspended. She'd been caught on the carpet. The court is familiar with the concept of progressive discipline. You hear that all the time. There are a series of violations that this employee demonstrates over a period of time that are progressively... Was there a finding that there was a cumulative weight to... Was she terminated because of her priors? She was terminated because of her repeated misconduct. That was certainly part of the review and the investigation and the determination. Is that in writing anywhere? It's in the report regarding and per the preliminary notice with respect to the final investigation that led to two different actions, the seven-day suspension as well as the termination and the recitation of the employment history leading up to that. Now, this court's not going to go back and look at the employment history of every employee case that comes before it. But in this case, you do have in the record that history of progressive discipline of a continuum of problems with this employee that led the department to the determination during her probationary period. So there is a causal connection there that she was on probation. The record clearly demonstrates that the board of fire commissioners had reduced her probation from 12 months to six months in response to one of her appeals to the board. But it was still during that probationary period that these further incidents arose. So basically, whatever the last thing she did was, in your view, the straw that broke the camel's back? There is clear record on that because as the court knows from the prior discipline, one of the issues with her performance was her credibility, her honesty in reporting. When this most recent event occurred in early 2002, that was, again, a recurrence of that issue. And the chief, you can disagree with the chief's analysis, but the record is clear. Based upon an independent investigation, she acted improperly and misrepresented the facts of the case. And again, she can dispute that, but that's not what is at issue here. It's whether or not the chief had a foundation based upon the record before him upon which to act. And the facts are not refuted. There was no doctor order to her that she should follow the patient, directly contrary to what she reported. Did the chief have a legitimate basis for acting on her false reporting? The answer is yes. And that, in the absence of any contravailing evidence of pretextual acts by the chief, overrides her prima facie case. And summary judgment in that case is appropriate. Well, isn't it kind of pretextual for the chief to say, give me a list of all the reasons why you have a hostile environment? She's 15 minutes late in presenting the list. She does it by email, but doesn't sign it. And he says, aha, we got you. I mean, isn't that a privilege of facts, not being pretextual? For every year leading up to this, she says, I have not been subject to any sexual harassment. In her deposition, she says, I've never been subject to sexual harassment. At the final stages of this investigation, she says, I've been subject to harassment. The chief says, all right, I'm going to pay you. You go off and write this report and tell me how you've been harassed, because you've never raised that issue before before this department. She doesn't do as she's told. And he says, you know what? I paid you. I paid you to prepare a report to tell me how you've been harassed. You're 15 minutes late, and you didn't send an email. That's right. And is that insubordinate, when she's been paid to give that opportunity? Sure. Is that another of the straws that broke the camel's back? Certainly. But is it pretextual? No, not in the context of a continuum of progressive discipline. The respondents stand on their brief for a minute. I would, of course, argue that it was pretextual. That the email that he says he received 15 minutes late, and we don't know the exact time it was sent, because it's not documented, but that... But she doesn't dispute that the chief told her, get the report on my desk by 8 o'clock. And I believe that she believes she sent it prior to 8 o'clock, that he, for whatever reason, I don't know. I don't know the reason it didn't get to his desk at 8 o'clock. The fact that it was unsigned, I think when it's transmitted by email, it's a direct report from her that he's asked for. How much time did it take her to write the report? To tell you the truth, I don't remember. 24 hours. 24 hours. I wouldn't dispute that at all. Did she work a 24-hour shift? I assume she did. Quite often, she'd work a 24-hour shift. And I think it's one on, two off, or something like that. But we honestly believe that this was pretextual firing. And we think that she got demoted because he didn't like the fact that he had a female officer. She was the only female officer, then or before. Did he hire her? Did he promote her to captain? Isn't there some sort of... I just don't understand that he was... She was hired as a paramedic, okay? So, yes, he hired her. She took the test for lieutenant, and they had no choice but to promote her because they had no basis not to promote her. And she was next on the list. And she was next for the captain's list, and she was at the top of the list, and they had nothing they could use against her. But within short order, they became very unhappy with her because she wasn't going along with what the chief wanted to do when it didn't fit the protocol she was supposed to follow. Well, that's not sex discrimination. And that's... I understand... That happens frequently in the workplace, and when somebody's on probation, you get terminated. And it can happen. But they don't get terminated from the job. She had a full-time permanent position as a paramedic firefighter. She was not terminated as a result of probation violation. Probation violation only took away her captain's rank. And because she had not finished the probation for lieutenant... So that would have bumped her down from captain to lieutenant to paramedic firefighter. No, all the way to paramedic firefighter, but she wasn't permanent. She was lieutenant for two months, right? Right. So that was the basis for her going down. The termination was as a paramedic firefighter. And so I would ask you to take a look at this case. I think it deserves a day in court. Thank you. Thank you. Thank you. Case to start. It is submitted for decision.
judges: Schroeder, Tallman, Bea